UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CHRISTIAN CAMPOS,

       Plaintiff and Appellant,

   v.

WELLS FARGO BANK, N.A.,

       Defendant and Appellee.

CASE NO. CIV. S-04-1892 WBS

MEMORANDUM AND ORDER RE:
BANKRUPTCY APPEAL

----oo0oo----

      Appellant Christian Campos (debtor), in his individual capacity, appeals, pursuant to 28 U.S.C. § 158(a), an order of the United States Bankruptcy Court denying his claim for relief from appellee Wells Fargo Bank's (the Bank's) seizure of funds from his savings account.

I.  Factual and Procedural Background

      The following undisputed facts are largely taken from the October 7, 2003 trial transcript where they were read into the record.  On September 22, 1994, the Bank obtained a judgment against debtor for $8,850.87.  (Appellant's Excerpts of R. vol. 2, Rep.'s Tr. 13, Oct. 7, 2003.)  This judgment arose out of a

business MasterCard account jointly issued to debtor and his
former spouse. (Id.)  Debtor was never personally served with
the judgment, as service was completed by publication. (Id.)

In 1998, debtor tried to open a new checking account
with the Bank. (Id. at 15.)  But before the Bank would accept
his business, debtor was required to settle $300 worth of bad-
check charges identified in his credit check report. (Id. at 7.)
He eventually avoided these fees, however, because when he
returned to pay this debt and open his account in 1999, the
charges had disappeared. (Id.)  The Bank never mentioned the
unrelated outstanding judgment against him. (Id. at 15.)

When debtor successfully opened the 1999 account, he
signed what his attorney described as "a garden variety check
card" that included "a hundred pages of fine print . . . ."
(Appellant's Excerpts of R. vol. 9, Rep.'s Tr. 7, Aug. 4, 2004.)
The agreement included a paragraph covering "the Bank's right to
set off" that contained the following language:

> To secure your performance of this agreement, you grant
> the Bank a lien on the security interest and the
> security in or affiliate of the Bank.  In addition, you
> acknowledge that the Bank may set off against any
> accounts you own, including matured and unmatured time
> accounts for any obligations you owe the Bank at any
> time and for any reason allowed by law. . . . The Bank
> may consider this Agreement as your consent to the
> Bank's asserting its security interest or exercising
> its right of set off should any law require your
> consent.

(Id. at 12.)  The agreement also provided that California law
would control the relationship between the parties. (Id. at 13.)

At some point, the Bank connected debtor to the 1994
judgment and on August 27, 2002 "set off the entirety of the
balances in the debtor's checking and savings accounts of

2

$3,195.35,[1] leaving a zero balance." (Appellant's Excerpts of R. vol. 2, Rep.'s Tr. 15, Oct. 7, 2003.)  However, on September 5, 2002, the Bank "returned $1,400 to the debtor so he could pay his mortgage . . . ." (Id.)  Thus only $1,795.35 remains in dispute. (Id.)

On November 8, 2002, debtor commenced a Chapter 7 bankruptcy case.  (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 1.)  Pursuant to 11 U.S.C. § 522, debtor next commenced these proceedings on November 15, 2002 to recover the remaining set off funds.  (Br. of Appellee at 10); see also 11 U.S.C. § 522 (allowing the debtor in a bankruptcy case to assert, under some circumstances, the reclamation powers of the bankruptcy trustee). After two days of evidentiary hearings and three post-trial hearings, the bankruptcy court dismissed debtor's complaint without a written order.  (Br. of Appellee at 10.)  Debtor filed this appeal on September 10, 2004.

II.  Discussion

This court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  In re Dewalt, 961 F.2d 848, 850 (9th Cir. 1992).  As the material facts of this case appear largely undisputed, the court here need only review the bankruptcy court's legal determinations.

Debtor presents here, as he did in the bankruptcy court, several theories for recovery.  He argues first that the agreement he signed when he opened the 1999 checking account did

---

[1] $3,195.35 was the total amount in debtor's checking and savings accounts.  Separately, he had $1,238.60 in checking and $1,956.75 in savings.  (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 5.)

3

1  not pledge the exempt account funds as a surety for existing

2  debts owed to the bank because he was unaware of any judgment

3  against him.  He then argues that the seized funds were protected

4  by California law and whether taken as a set off or in execution

5  of a judgment, the bank was required to provide notice and an

6  opportunity to claim the funds as exempt.  In addition, as a

7  result of these allegedly overly aggressive tactics, debtor

8  claims that the Bank secured a preferential payment in violation

9  of 11 U.S.C. §§ 547 and 522.  Finally, debtor argues that the set

10  off is avoidable because the transfer of funds was fraudulent

11  under 11 U.S.C. § 548 and Cal. Civ. Code §§ 3439-3439.12 (Uniform

12  Fraudulent Transfer Act (UFTA)).  The court will consider each of

13  these theories in turn.

14       A.   Contractual Right to Set Off

15            Debtor disputes the Bank's claim that it had a

16  contractual right to set off funds, exempt or otherwise, based on

17  the terms of the agreement signed and applicable to the 1999

18  checking account.  He argues that because neither party was aware

19  of the outstanding judgment at the time they entered into the

20  agreement, the checking account funds were never pledged as

21  collateral for the judgment debt.  (Appellant's Opening Br. at

22  7.)  In support of this argument, debtor relies on Los Angeles

23  Investment Co. v. Home Savings Bank of Los Angeles, 180 Cal. 601,

24  612-14 (1919) for the proposition that "[i]n California, a bank

25  may not 'sneak something past' a new depositor."  ((Appellant's

26  Opening Br. at 6.)  Los Angeles Investment, is, however,

27  factually distinguishable from the case at hand, as it involved a

28  statement not signed by the plaintiff.  180 Cal. at 613.  The

4

California Supreme Court found no reason not to allow depositors
to enter even unreasonable agreements with banks, as long as the
depositor demonstrated affirmative consent to the agreement,
"either by being required to sign it <u>or</u> by having his attention
particularly called to it."  <u>Id.</u> (emphasis added).  The court put
the burden on the signer to "know that he is accepting a contract
[and] . . . realize the necessity of acquainting himself with its
terms."  <u>Id.</u>  The debtor here thus properly consented to the
terms of the agreement.

        Notwithstanding debtor's consent, a valid contract also
requires bargained-for consideration, and debtor argues that the
bankruptcy court found this lacking in this case. (Appellant's
Reply Br. at 5.)  Debtor's arguments take the findings of the
bankruptcy court out of context.  When analyzing the facts of
this case under the fraudulent transfer statutes, the bankruptcy
judge did observe that "to the extent that [the agreement between
debtor and the Bank] refer[red] to past debts, there [was not]
reasonably equivalent consideration, even though there [was]
consideration."  (<u>See</u> Appellant's Excerpts of R. vol. 9, Rep.'s
Tr. 23, Aug. 4, 2004.)  However, as the bankruptcy judge's
statement implies, the "reasonably equivalent" standard for
consideration is specific to those statutes and is not the
standard for evaluating the validity of a contract.  Under the
more general contract formation analysis, "[g]ross inadequacy of
consideration may be relevant to issues of capacity, fraud and
the like, but the requirement of consideration is not a safeguard
against imprudent and improvident contracts except in cases where
it appears that there is no bargain in fact."  Restatement

(Second) of Contracts § 79 cmt. C (1981).

If the parties have bargained for an exchange, "there is no additional requirement of . . . equivalence in the values exchanged." Id. § 79(b).  Furthermore, debtor cannot invalidate his contract with the bank simply because he was mistaken as to the value of the consideration he offered absent evidence that the Bank knew debtor was mistaken as to a "basic assumption on which he made the contract." Id. § 153.  No record evidence supports this theory.  The bankruptcy court therefore properly found that the check card agreement was supported by consideration, the adequacy of which is not at issue when examining the validity of the contract.  The Bank's set off was consequently justified by the plain terms of a binding contract.

B.   Notice Requirement for Set Offs and Judgment Executions

Even if the check card agreement was not a valid contract due to a lack of consideration, the Bank's appropriation of debtor's funds was still legal.  The Bank only needed the check card agreement if the seized funds were indeed exempt[2] and thus protected from the Bank's generic and historical set off rights.  As the Bank correctly notes, a portion of the funds seized, those in the savings account, were not exempt and these are the only funds still at issue in this case.

Debtor argues only one theory of exemption: his wages, subject to continuing garnishment by the District Attorney to pay

---

[2] Under California law, certain types of property, specified in Cal. Code. Civ. Proc. § 704.010-.210, are exempt from judgment executions and cannot be levied upon.  Likewise, Cal. Fin Code § 864(3) allows debtors covered by that provision to avoid set off when the property qualifies as exempt under Chapter 4 of the Judgements Law, Cal. Code. Civ. Proc. §§ 703.010-706.

1    a child support debt, were exempt under Cal. Code. Civ. Proc. §
2    704.070(b)(1).  But he fails to respond to the Bank's argument
3    that, while the checking account funds may have consisted of
4    debtor's salary deposits, by his own admission, the savings
5    account did not.  The Bank points to the following admission from
6    debtor's testimony: "All of the funds they took from my accounts
7    and applied on the judgment were from my wages <u>except</u> for what
8    was in the savings account . . . ."  (Br. of Appellee at 16
9    (quoting July 28, 2003 Campos Alternate Direct Test.)(emphasis
10   added).)  In response, debtor provides only his unsupported
11   conclusion that "[t]he record clearly shows that most of the
12   funds deposited . . . were totally exempt from levy as they were
13   the debtor's net earnings after the District Attorney's
14   garnishment."  (Appellant's Reply Br. at 8 n.2.)  This statement
15   fails to overcome the Bank's argument and the court therefore
16   finds that the funds in the savings account were not exempt.

17        The Bank was thus free to exercise its equitable right
18   to set off, separate from any contractual right it secured
19   through the check card agreement.  Contrary to debtor's
20   arguments, which present § 864 of the California Financial Code
21   as the sole and comprehensive source of a bank's set off rights,
22   this power comes from common law and is codified in Cal. Code
23   Civ. Proc. § 431.70.  <u>See</u> <u>Kruger v. Wells Fargo Bank</u>, 11 Cal. 3d
24   352, 363 (1974) (quoting <u>Jojola v. Wells Fargo Bank</u>, No. C71-900,
25   1973 WL 158166, at *3 (N.D. Cal. 1973)).  "If the depositor is
26   indebted to the bank and his or her obligation is due, there is a
27   mutuality of obligation from which flows an equitable right of
28   setoff."  <u>Martin v. Wells Fargo Bank</u>, 91 Cal. App. 4th 489, 494

7

1   (2001) (quoting <u>Chang v. Redding Bank of Commerce</u>, 29 Cal. App.

2   4th 673, 681 (1994)). "Th[is] right . . . allows entities that

3   owe each other money to apply their mutual debts against each

4   other, thereby avoiding the absurdity of making A pay B when B

5   owes A." <u>Parker v. Cmty First Bank</u>, 123 F.3d 1243, 1245 (9th

6   Cir. 1997) (quotations omitted).

7        Here, by virtue of debtor's checking account and the

8   Bank's judgment against debtor, the parties were in mutual

9   debtor-creditor relationships. <u>In re Bernard</u>, 96 F.3d 1279

10  (9th Cir. 1996) (under California law, a depositor is a creditor

11  of the bank and the bank is, in turn, the debtor).

12  Notwithstanding any limitations imposed by statute, the Bank thus

13  had a right to offset the debt owed by debtor under the 1994

14  judgment against the debt owed to the debtor based on his

15  deposits.

16       Debtor presents two possible limitations on the Bank's

17  power to set off. First, debtor argues that Cal. Fin. Code §

18  864, which provides notice procedures and exemptions for set offs

19  imposed on individual consumers, describes the full extent of a

20  Bank's set off power and the procedures that must be followed to

21  exercise it. Because these provisions do not apply when the debt

22  to be set off has been reduced to a judgment, debtor argues that

23  the Bank has no right to offset. Debtor misreads § 864 as a

24  grant of a Bank's right to set off when it is actually a

25  limitation on the power under given circumstances, none of which

26

27

28

1  are present in this case.[3]  See Martin, 91 Cal. App. 4th at 496

2  (explaining that, despite the passage of Cal. Fin. Code § 864,

3  banks continue to enjoy an equitable right to set off with

4  commercial clients).  The Bank was thus not required to follow

5  the notice provisions of § 864.

6          Second, debtor argues that because the Bank had secured

7  a judgment, it was required to follow the notice procedures of

8  the California Enforcement of Judgments Law, Cal. Code Civ. Proc.

9  §§ 680.010-724.260.  Even if the Judgments Law applied to this

10 case, however, debtor would not have had a right to notice that

11 was violated by the Bank's approach.  The Judgments Law provides

12 detailed procedures for levying on property in pursuit of a court

13 ordered judgment.  The law painstakingly describes how to serve a

14 writ of execution when (1) a third party, (2) the judgment

15 debtor, or (3) the levying officer has possession of the property

16 on which levy is sought.  Id. § 700.030-.050.  Nowhere does the

17 law contemplate how to serve a writ of execution in the event

18 that the judgement creditor already has possession of the

19 judgment debtor's funds, which leads the court to conclude that

20 the formalities of the Judgments Law are unnecessary under such

21 circumstances.  Therefore, no applicable law provided procedures

22 to constrain the Bank's seizure of debtor's funds in this case.

23

24          [3] The parties are in agreement that Cal. Fin. § 864 does not
   control here, although for different reasons.  Debtor opines that
25 because the Bank had already secured a judgment, the provisions
   did not apply.  See id. § 864(a)(2).  The Bank correctly notes
26 that § 864 does not limit its set off rights when the debt arises
   from a relationship formed for commercial purposes.  See Martin,
27 91 Cal. App. 4th at 491 (holding that § 864 does not apply when
   depositor's personal funds are seized to cover an unpaid
28 MasterCard account opened for depositor's business).

                                    9

1          C.   Preferential Payment

2          Debtor's next theory is that, due to the timing of the

3   Bank's set off and debtor's bankruptcy petition, the Bank

4   realized an unlawful preferential payment in violation of 11

5   U.S.C. §§ 547 and 522.  As an initial matter, the court notes

6   that the preferential payment provisions of 11 U.S.C. § 553,

7   covering set offs, rather than those of § 547, covering

8   "transfers," applies in this case.[4]  Lee v. Schweiker, 739 F.2d

9   870, 873 n.4 (3d Cir. 1984) ("[W]here a setoff right is being

10  asserted, section 553, rather than section 547, governs the

11  creditor's rights." (citing F.D.I.C. v. Bank of Am., 701 F.2d

12  831, 836 (9th Cir. 1983)); see also In re Rehab Project, Inc.,

13  238 B.R. 363, 372 (Bankr. N.D. Ohio 1999) ("[I]t is abundantly

14  clear that when § 553 is determined to be applicable, § 547

15  cannot thereafter be utilized to undo its effect.").  Section

16  553(b)(1) allows the bankruptcy trustee[5] to recover a set off that

17  takes place "within 90 days before the date of the filing of the

18  petition" but only to the extent that the creditor improves his

19

20      [4] Set off in the context of 11 U.S.C. § 553 is defined by
    the Ninth Circuit as an "adjustment[] of mutual debts arising out
21  of separate transactions between the parties."  In re Harmon, 188
    B.R. 421, 425 (B.A.P. 9th Cir. 1995).  "Mutual" means debts
22  between the same parties, not necessarily based on the same
    contractual relationship.  See Doe v. United States, 58 F.3d 494,
23  498 (9th Cir. 1995) (holding that the IRS's claims against the
    bankruptcy estate could reduce any judgment against any
24  government agency under the Federal Tort Claims Act).  Therefore,
    even unrelated debts, like debtor's claim to his funds in the
25  1999 checking account and the Bank's judgment against debtor on a
    separate MasterCard account, can be offset against each other.

26      [5] Although debtor is not the trustee in this case, 11 U.S.C.
    § 522(h) provides that the debtor may "recover a setoff to the
27  extent that the debtor could have exempted such property under
    subsection (g)(1) of this section," and if the trustee does not
28  herself attempt to avoid such transfer.  Id. § 522(h)(1)-(2).

10

1  position by offsetting within, rather than prior to, the 90 day

2  period.

3        The Bank provides detailed calculations demonstrating

4  that, by executing a set off on August 27, 2002, rather than

5  August 10, 2002 (the 90th day prior to bankruptcy), it

6  "temporarily" improved its position by $671.20 (debtor had more

7  money on deposit on August 27 compared to August 10).  (Br. of

8  Appellee at 12.)  As the Bank notes, however, when it returned

9  $1,400 to debtor on September 5, 2002, it more than made up for

10 any gains realized by setting off during the restricted 90 day

11 period.  Because neither party contended that the $1,400 was

12 returned to discharge some other obligation, even when invited by

13 the court to do so at oral argument, the court accepts the Bank's

14 claim that any preference it may have received was netted out.

15 The Bank's refusal to return the remaining $1,795.35 therefore

16 does not offend 11 U.S.C. § 553 because the Bank's actions did

17 not secure a preferential payment.

18       D.   <u>Fraudulent Transfer</u>

19       This leaves debtor's constructively fraudulent transfer

20 claims under 11 U.S.C. § 548 and California Civil Code § 3439.05.

21 Federal law permits a bankruptcy trustee to void transactions

22 completed within a year[6] prior to the debtor's filing of a

23 petition for bankruptcy if, voluntarily or involuntarily, the

24 debtor "received less than a reasonably equivalent value in

25 exchange for such transfer or obligation" and became insolvent as

26

27       [6] 11 U.S.C. § 548 was amended April 20, 2005 to extend the
   relevant transaction period from one to two years.  Pub. L. No.
28 109-8, 119 Stat 23 (to be codified at 11 U.S.C. § 548(a)).

1  a result of the obligation.  11 U.S.C. § 548(a)(1)(B)(i),

2  (a)(1)(B)(ii)(I).  Section 522(h)(1) extends this right of the

3  trustee to the debtor under certain circumstances specified in §

4  522(g)(1).[7]

5          Similarly, the UFTA, Cal. Civ. Code § 3439.05, defines

6  a transfer as fraudulent when made "without receiving a

7  reasonably equivalent value in exchange for the transfer or

8  obligation and the debtor was insolvent at that time or the

9  debtor became insolvent as a result of the transfer or

10 obligation."  When evinced by a writing, as in this case,

11 obligations are incurred at the time the writing is signed.  Id.

12 § 3439.06(e)(2).

13         The bankruptcy court determined "that the security

14 interest [in the checking account funds] was supported by

15 reasonably equivalent consideration to the extent that it picked

16 up future debt," but not to the extent that it covered past debt.

17 (See Appellant's Excerpts of R. vol. 9, Rep.'s Tr. 25, Aug. 4,

18 2004.)  Debtor thus met the first requirement of both statutes--

19 lack of reasonably equivalent consideration.  However, the

20 demands of the federal law were not met because the obligation[8]

21

22         [7] Significantly, under § 522(g)(1) the challenged transfer
   must have been involuntary, a requirement that the Bank argues
23 has not been met in this case.  However, the court need not
   search for a definition of voluntary, because even if debtor has
24 a cause of action for fraudulent transfer, it is not one on which
   he can succeed.
25

26         [8] Although both the Federal and California fraudulent
   transfer statutes address the timing of the "transfer or
27 obligation," the court finds that a set off is more akin to an
   obligation than a transfer.  Indeed, under the Federal Bankruptcy
28 code, a set off "involves a mere netting-out of counterclaims or
   reconciliation of accounts and not a transfer of money or

1    that debtor sought to avoid was entered into over a year before

2    he filed for bankruptcy.  (<u>Id.</u> at 25.)   Additionally, debtor's

3    claims failed under the second part of both the federal law and

4    UFTA because he was not insolvent when he entered into the second

5    relationship with the Bank, nor was he made insolvent by that

6    obligation at the time it was made.  (<u>Id.</u> at 26.)

7         The court agrees with the bankruptcy court regarding

8    debtor's failure to meet the timing and insolvency requirements

9    and therefore need not address the question of "reasonably

10   equivalent" consideration.  As the Bank points out, the purpose

11   of the fraudulent transfer laws is "to prevent the debtor from

12   depleting the resources available to creditors through gratuitous

13   transfers of the debtor's property" in the final moments before

14   filing for bankruptcy.  <u>In re N. Merch., Inc.</u>, 371 F.3d 1056,

15   1060 (9th Cir. 2004).  In furtherance of this goal, the relevant

16   transfer period is tethered to the debtor's bankruptcy petition.

17   This requirement grounds even the constructive fraudulent

18   transfer theory and prevents debtors, like Campos, from avoiding

19   their commitments by suggesting that they undertook certain

20   obligations solely to defraud creditors years down the road.

21   Debtor is thus not entitled to avoid the Bank's offset as a

22   constructive fraudulent transfer.  To hold otherwise would

23   _____

24   property . . . ."  <u>In re Hancock</u>, 137 B.R. 835, 845 (Bankr. N.D.
     Okl. 1992) (emphasis added); <u>see also</u> <u>In re Remillong</u>, 131 B.R.
25   727, 728 (Bankr. D. Mont. 1991) ("[T]he definition of 'transfer'
     under 11 U.S.C. § 101(54) excludes setoff . . . .").  For this
26   reason, the date on which debtor entered into a relationship with
     the Bank impacts the application of the fraudulent transfer
27   statutes.  In this case, the relevant date was thus the date on
     which debtor undertook an obligation that exposed his resources
28   to set off by the Bank.

1  unjustifiably extend the scope of both statutes beyond the

2  legislatures' intent.

3          IT IS THEREFORE ORDERED that the bankruptcy court's

4  order dismissing debtor's complaint be, and the same hereby is,

5  AFFIRMED.

6  DATED:  November 30, 2005

7

8  _____

   WILLIAM B. SHUBB

9  UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14